IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MINNY FRANK,

       Plaintiff,

   v.

CASCADE HEALTHCARE COMMUNITY,
INC. dba ST. CHARLES MEDICAL
CENTER; EDWARD PALMER, MD;
REBECCA TIMMS; SCOTT NAMANNY;
THE CITY OF BEND; BEND POLICE
DEPARTMENT; and CENTRAL OREGON
EMERGENCY PHYSICIANS, LLC;

       Defendants.

Case No. 6:11-cv-06402-AA
OPINION AND ORDER

---

Minny Frank
61535 S. Hwy 97, #236
Bend, Oregon 97701
    Pro se plaintiff

Robert E. Franz, Jr.
Law Office of Robert E. Franz, Jr.
P.O. Box 62
Springfield, Oregon 97477
    Attorney for defendants Scott Namanny and Ian Macdonnell

AIKEN, Chief Judge:

Page 1 - OPINION AND ORDER

Plaintiff Minny Frank moves for summary judgment, pursuant to Fed. R. Civ. R. 56(a), on her claims against defendants Scott Namanny and Ian Macdonnell. Namanny and Macdonnell filed a cross-motion for summary judgment. For the reasons set forth below, plaintiff's motion is denied and defendants' motion is granted. This case is dismissed.

**BACKGROUND**

The history of this matter is well known to all parties. It will therefore only be repeated to the extent necessary to provide context for the present motions.

On January 13, 2010, after mixing alcohol and prescription medications, plaintiff became extremely intoxicated and repeatedly threatened her life in the presence of her husband. Plaintiff's husband called 911; Namanny and Macdonnell, Bend police officers, were dispatched to plaintiff's residence. When they arrived, plaintiff was restrained by her husband in a room with two guns, one of which was loaded. Plaintiff was uncooperative with the police and, as a result, they hand-cuffed and Mirandized her.

Thereafter, the police interviewed plaintiff, where she admitted that she held a gun to her stomach intending to harm herself. Namanny explained to plaintiff that it would be in her best interest to speak with a mental health specialist. Plaintiff agreed to go to the hospital so Namanny and Macdonnell transported her to the emergency department ("ED") of St. Charles Medical

Page 2 - OPINION AND ORDER

Center ("SCMC"), a private, non-profit hospital, pursuant to Or. Rev. Stat. § 426.228.

Upon admittance to the ED, plaintiff was contacted by Rebecca Timms, a licensed clinical social worker. Plaintiff became combative, yelling and using profanity, because her handcuffs had not yet been removed. Plaintiff's uncooperative and aggressive behavior continued despite SCMC employees' calming efforts. Eventually, she was subdued by Charge Nurse Nichole Ryan, after which plaintiff's handcuffs were removed. She was examined by Edward Palmer, M.D., an ED physician, and interviewed by Timms.

During her interview, plaintiff reported that she held a loaded gun to her head earlier that evening and wanted to kill herself. Plaintiff also reported that she drank four glasses of vodka and often harms herself via an overdose of prescription medication. In conferral with Timms and Magnus Lakovics, M.D., the admitting physician, Palmer determined that plaintiff was a potential harm to herself and/or others and initiated an emergency psychiatric hold in SCMC's psychiatric emergency services ("PES") unit. Plaintiff was informed that she was going to be held overnight in the PES unit and needed to submit to a skin-check and change into scrubs pursuant to hospital policy.[1]

---

[1] Specifically, SCMC's policy requires all patients "to be placed in hospital clothes in [the ED]" and then searched "for medications[,] sharp objects," and any signs of injury prior to admission to the PES unit. <u>Frank v. Cascade Healthcare Cmty., Inc.</u>, 2013 WL 867387, *3-4 (D.Or. Mar. 6, 2013) (citations and

Page 3 - OPINION AND ORDER

Upon receiving this information, plaintiff again began yelling and became combative; she demanded to speak with the on-call ED doctor who evaluated her and refused to change into scrubs or voluntarily admit herself to the PES unit.   Palmer returned and informed plaintiff that it was his and his staffs' opinion that she needed further treatment.   Plaintiff then erupted at Palmer and began personally threatening him, at which point Palmer ordered the administration of medication to plaintiff in order to effectuate her transition into the PES unit.

Plaintiff continued to refuse to change into hospital scrubs, even after being informed of SCMC's policy.   Plaintiff was warned that she would be forcibly held down and changed into scrubs if she failed to comply; plaintiff still refused cooperate and screamed to see a patient advocate and a written copy of the hospital's policies.   Plaintiff was then physically restrained by Namanny, Macdonnell, and SCMC staff while Penny Lancaster, a female nursing assistant, performed a skin-check and replaced plaintiff's existing clothes with hospital scrubs.   Throughout this process, plaintiff continued to yell, kick, and threaten those around her.

After plaintiff was changed into scrubs, she was transported

---

internal quotations omitted).   The primary purpose of this policy is to "ensure the safety of patients, physicians, facility staff, and visitors from dangerous articles, unauthorized medications, and other items which could cause harm."   Id. (citation and internal quotations omitted).   The use of force is also authorized where it is necessary for security purposes.   Id.

to the PES unit and administered anti-anxiety and sedative medications. Plaintiff remained in the PES unit until the following morning, January 14, 2010, when she was discharged into her husband's care after a psychiatric evaluation revealed that she was no longer a threat to herself or others.

On December 9, 2011, plaintiff filed a complaint in this Court. On April 16, 2012, plaintiff moved to file an amended complaint; on May 16, 2012, plaintiff moved to file a second amended complaint. On June 26, 2012, this Court granted plaintiff's motions. On July 12, 2012, plaintiff filed a second amended complaint. On September 21, 2012, plaintiff was granted leave to file her third amended complaint ("TAC"), alleging: (1) several negligence and negligent, reckless, and intentional infliction of emotional distress claims ("NIED," "RIED," and "IIED," respectively) under Oregon law; and (2) deprivations of her Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

On March 6, 2013, this Court granted summary judgment in favor of Palmer, Timms, Ryan, Lancaster, Central Oregon Emergency Physicians, LLC, the City of Bend, SCMC, Patricia Violet, Christine Huffman, Randal Mcbride, Jonathan Beutler, and Justin Nelson. These parties were dismissed as defendants from this action and the only remaining claims were those asserted against Namanny and Macdonnell for negligence, NIED, RIED, NIED, and violations of the

Fourth and Fourteenth Amendments.  The Court then denied several motions for reconsideration filed by plaintiff.  On December 3, 2013, plaintiff moved for summary judgment against Namanny and Macdonnell.  On December 27, 2013, defendants filed a cross-motion for summary judgment.

**STANDARD**

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Substantive law on an issue determines the materiality of a fact.  T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of

genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Elec.</u>, 809 F.2d at 630.

## DISCUSSION

This dispute centers on whether defendants' use of physical restraint violated plaintiff's constitutional rights. <u>See</u> TAC ¶¶ 67, 74 (alleging that Namanny and Macdonnell deprived plaintiff of her Fourth and Fourteenth Amendment rights "when they participated in physically restraining" her); <u>see also</u> Pl.'s Mem. in Supp. of Mot. Summ. J. 4-9. Namanny and Macdonnell argue that plaintiff's claims are time-barred under the relevant statutes of limitations. Alternatively, defendants contend they are entitled to qualified immunity.

I. <u>Preliminary Issues</u>

The Court must first ascertain whether plaintiff's claims are timely. Moreover, two factual issues merit clarification.


A. <u>Statute of Limitations</u>

Namanny and Macdonnell contend that plaintiff's claims are time-barred because "[t]he incident in this lawsuit occurred on January 13, 2010," and the amended complaints naming them as defendants were filed after the two-year statute of limitations expired on January 13, 2012. Defs.' Mem. in Supp. of Cross-Mot.

Page 7 - OPINION AND ORDER

Summ. J. 6-7.

Defendants' assertion ignores the fact that the Court previously addressed this precise issue, holding that "plaintiff's claims against defendants relate back to the original complaint," which was filed on December 9, 2011, well within the limitations period, and therefore were not time-barred. <u>Frank v. Cascade Healthcare Cmty., Inc. ("Frank II")</u>, 2012 WL 4323962, *2-3 (D.Or. Sept. 13, 2012); <u>see also</u> Order on Mot. to File Second Am. Compl. 2 (June 26, 2012) ("[t]here is no dispute that plaintiff's request to add the Doe police defendants as well as Timms relates back to the incident giving rise to plaintiff's claim as set out in her original complaint"). The Court declines to depart from its prior rulings. <u>See</u> <u>Herb Reed Enter., LLC v. Fla. Entm't Mgmt., Inc.</u>, 736 F.3d 1239, 1245 (9th Cir. 2013) (citation omitted).

B.    <u>Clarification of the Record</u>

Plaintiff's 42 U.S.C. § 1983 claims are premised on defendants' allegedly unlawful search and seizure. These claims are also predicated on the fact that defendants allegedly knew that plaintiff had previously been sexually abused, such that they were on notice that she would suffer negative psychological consequences as a result of their actions.

Beyond plaintiff's bare allegations, there is no evidence in the record that either Namanny or Macdonnell participated in any search. Although there is no dispute that plaintiff was restrained

by defendants, the only individual that actually searched plaintiff or participated in her disrobing and redressing was Lancaster, a female nursing assistant employed by SCMC. See Franz Decl. Ex. 104 ("Ryan Decl."), at ¶ 8; Franz Decl. Ex. 108 ("Ryan Dep."), at 54, 58-60.

Further, there is no evidence in the record that defendants knew or should have know of plaintiff's past sexual abuse.    In fact, the evidence plaintiff relies on  - i.e. defendants' police report - reflects her statement that her husband was "verbally and physically abusive" on the night in question. is to the contrary. Franz Decl. Ex. 107 ("Police Report"), at 2-3.  Further, Namanny and Macdonnell explicitly deny that they were present during plaintiff's clinical interview with Timms or able to overhear that conversation.  Id. at 3 ("[a]fter about 5 minutes or so, Frank again was calm and she spoke with mental health.    Officer Macdonnell and I waited outside and . . . I could not hear the conversation").

Moreover, Ryan's deposition statements, on which plaintiff also relies, indicate that police officers are required, pursuant to SCMC policy, to remain in the ED with any patient they brought in for psychiatric services, "especially for a patient who is out of control, yelling, screaming, carrying on." Ryan Dep. 19-20; see also id. at 28 (Ryan testifying that she was not present during Timm's assessment of plaintiff); Frank I, 2013 WL 867387 at *3-4

(outlining SCMC's policy regarding the presence of police in the ED).    In sum, the Court finds that defendants had no basis to regard plaintiff as a victim of past sexual trauma.

Thus, plaintiff's allegations concerning a "cross-gender search" or defendants' "subjective knowledge" of her past sexual abuse are without support and therefore insufficient to create a genuine issue of material fact.    See Celotex, 477 U.S. at 322 (summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial"); see also Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment") (citation omitted).

II.    Federal Claims

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law.    See West v. Atkins, 487 U.S. 42, 48 (1988); L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992), cert. denied, 508 U.S. 951 (1993).    It is undisputed that Namanny and Macdonnell qualify as state actors for the purposes of 42 U.S.C. § 1983.

Thus, the sole issue is whether defendants violated plaintiff's federal rights or are otherwise entitled to qualified immunity.

A.    Fourth Amendment Claim[2]

A federally recognized liberty interest to be free from unreasonable seizures exists under the Fourth Amendment. See United States v. Sharpe, 470 U.S. 675, 682 (1985) (Fourth Amendment does "not . . . guarantee against all . . . seizures, but only against unreasonable . . . seizures"). Generally, an individual is "seized" within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007) (emphasis, citations, and internal quotations omitted).

A distinction has been made, however, between cases in which "officers acted in a law-enforcement capacity [as opposed to] in an

-----

[2] Plaintiff's TAC alleges an unreasonable seizure claim under the Fourth Amendment, whereas her summary judgment briefing focuses exclusively on defendants' allegedly excessive use of force. Compare TAC pg. 27, with Pl.'s Mem. in Supp. of Mot. Summ. J. 5-7. Substantively, plaintiff's arguments indicate that her Fourth Amendment claim is one for unreasonable seizure, as her TAC and briefs assert that defendants' use of restraint was per se unreasonable. See, e.g., TAC ¶¶ 15, 67-70, 74; Pl.'s Mem. in Supp. of Mot. Summ. J. 5-9. Regardless of the legal theory of liability, plaintiff's Fourth Amendment claim fails because no seizure occurred within the meaning of the Fourth Amendment, which is a "threshold" issue for both unreasonable seizure and excessive force claims. See Lum v. City of Grants Pass, 2011 WL 915385, *13-14 (D.Or. Jan. 6), adopted by 2011 WL 867691 (D.Or. Mar. 10, 2011), aff'd, 484 Fed.Appx. 89 (9th Cir. 2012) (citing Kyllo v. United States, 533 U.S. 27, 31 (2001)).

emergency-medical-response capacity when engaging in the conduct that the plaintiff claimed violated the Fourth Amendment." Haas v. Cnty. of El Dorado, 2012 WL 1414115, *8 (E.D.Cal. Apr. 23, 2012) (citation and internal quotation omitted). "[A] government actor who restrains an individual while trying to render medical aid does not seize the person for purposes of Fourth Amendment analysis." Id. (citations and internal quotations omitted); see also Peete v. Metro. Gov't of Nashville & Davidson Cnty., 486 F.3d 217, 219 (6th Cir. 2007), cert. denied, 553 U.S. 1032 (2008) (Fourth Amendment is inapplicable when force is used to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate).

Further, where restraint is employed in a law-enforcement capacity but for mental health or "community caretaking" purposes, the Fourth Amendment is not violated provided that probable cause exists, which, in this context, "requires only a 'probability or substantial chance' of dangerous behavior, not an actual showing of such behavior." Ziegler v. Aukerman, 512 F.3d 777, 783 (6th Cir. 2008) (evaluating an officer's authority to take a mentally ill individual into custody in order to obtain psychological treatment for that individual) (citing Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983)); United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993) ("[w]hether the seizure of a person by a police officer acting in his or her noninvestigatory capacity is reasonable

depends on whether it is based on specific articulable facts and requires a reviewing court to balance the governmental interest in the police officer's exercise of his or her 'community caretaking function' and the individual's interest in being free from arbitrary government interference") (citations omitted).

Here, it is undisputed that plaintiff consented to accompany defendants to SCMC for a mental health evaluation. See Police Report 3. Additionally, plaintiff was not in police custody at the time of the restraint. Rather, medical staff from SCMC elected to detain plaintiff overnight in the PES unit based on their determination that she was a threat to herself or others and in need of immediate medical treatment. See Franz Decl. Ex. 101 ("Palmer Decl."), at ¶ 4; see also id. at Ex. 105 ("Timms Decl."), at ¶¶ 6-7. So once Palmer initiated the emergency psychiatric hold of plaintiff, she was no longer in police custody pursuant to Or. Rev. Stat. § 426.228, and instead was in SCMC custody under Or. Rev. Stat. § 426.232. See Or. Rev. Stat. § 426.228(4) ("[w]hen a peace officer . . . delivers a person to a hospital or nonhospital facility, a physician licensed by the Oregon Medical Board shall examine the person . . . If the physician finds the person to be in need of emergency care or treatment for mental illness, the physician shall proceed under [Or. Rev. Stat. §] 426.232"); see also Or. Rev. Stat. § 426.232(1)(a) ("[w]hen a physician . . . believes a person who is brought to a hospital . . . is dangerous

to self or to any other person and is in need of emergency care or treatment for mental illness, the physician may . . . detain the person and cause the person to be admitted").

It is also undisputed that, to the extent Namanny and Macdonnell remained at the hospital and participated in plaintiff's restraint, such actions were taken pursuant to SCMC policy and at the direction of SCMC staff. See Ryan Dep. 19-20, 48; Ryan Decl. ¶¶ 5-8; Police Report 2-4; TAC ¶ 23. This policy is in place to ensure that patients do not have weapons or a clothing item "that could be used to harm themselves or others," and to allow "providers to check the patient's skin to look for any signs of injury." Franz Decl. Ex. 103 ("Powers Decl."), at ¶¶ 3-8.

Defendants also provided uncontradicted evidence that plaintiff posed an immediate threat to herself and others on the night in question. See generally Palmer Aff.; Timms Decl.; Ryan Decl.; Powers Decl.; see also Police Report 2, 6 (plaintiff reported that she is "depressed and suicidal," and that she "had pointed the gun to her stomach with the intent of harming herself"; plaintiff's husband, who witnessed plaintiff's actions, stated that "Minny needed to be committed and was convinced that is she was released tonight she would hurt herself or the rest of the family"). In fact, that was precisely why she was brought to SCMC and ultimately admitted to the PES unit.

Moreover, Namanny and Macdonnell furnished unrepudiated evidence indicating that the use of restraint was necessary to

Page 14 - OPINION AND ORDER

effectuate SCMC's policy and to ensure plaintiff's safety and well-being, as well as the safety and well-being of SCMC staff.   See generally Palmer Aff.; Timms Decl.; Ryan Decl.; Powers Decl. Plaintiff could not be admitted to the PES unit until she underwent a skin-check and changed into hospital scrubs.  SCMC staff informed plaintiff of this policy, which existed to protect patients and staff, and gave plaintiff several opportunities to change into hospital scrubs or submit to a skin-check of her own accord; plaintiff was also warned that the failure to comply with SCMC's policy would result in the use of force.  See Ryan Decl. ¶¶ 4-8; Powers Decl. ¶¶ 3-8.  Plaintiff responded to these warnings by acting in a verbally threatening manner, throwing the scrubs, and taunting hospital staff by "crouching forward and saying go ahead and change me."  Ryan Dep. 44, 48; Ryan Decl. ¶¶ 6-7.[3]

Where, as here, a police officer acts pursuant to a private hospital's policy in order to secure emergency services for a out-of-control and combative patient, his conduct is that of a medical responder.  Any force applied under these circumstances is not a

---

[3] Plaintiff contends that "no reasonable jury [could] conclude that [she] pose[d] a threat to anyone's safety" because Ryan was initially able to calm her upon her admittance to the ED and "[t]he record shows that Plaintiff was cooperative enough to allow for a physical [and psychological] exam."  Pl.'s Mem. in Supp. of Mot. Summ. J. 7.  Plaintiff's argument, however, wholly ignores the timing of events on the night in question, as well as several other salient facts.  In other words, plaintiff's initial compliance with treatment has no bearing on whether she was acting in a verbally and/or physically threatening manner at the time she was restrained.

Page 15 - OPINION AND ORDER

"seizure" within the meaning of the Fourth Amendment.  See, e.g., Lum, 2011 WL 915385 at *13-15 (when confronted with a physically combative and non-responsive person, no seizure occurred under the Fourth Amendment where officer was one of several people attempting to assist the paramedics, who needed to control the individual's thrashing in order to evaluate his medical condition and to prevent patient from injuring himself).

Even assuming defendants' actions were similar to conduct taken in a law-enforcement capacity, summary judgment is still appropriate because the use of restraint was reasonable based on the totality of the circumstances.  Because a medical emergency existed and plaintiff's own actions interfered with necessary treatments, force was applied to effectuate plaintiff's skin-check, change into scrubs, and admittance to the PES unit.  Specifically, defendants restrained plaintiff's arms and/or legs for between ten and fifteen minutes.  See Ryan Dep. 35, 49, 63.  This use of force was neither physically painful nor did it cause physical injury. See also Ryan Dep. 34-35 ("I just had just enough restraint on your head to keep you from sitting up or trying to bite staff or throwing your head around . . . but I was not causing you any harm"); Frank I, 2013 WL 867387 at *13-14 (plaintiff failed to introduce any evidence of physical injury).[4]

---

[4] In her most recent request for reconsideration of this Court's previous summary judgment decision, plaintiff furnishes evidence of a jaw injury allegedly "attribut[able] to Nichole Ryan's holding of her head."  Pl.'s Mot. to File Fourth Am.

Page 16 - OPINION AND ORDER

Additionally, defendants, in conjunction with SCMC staff, used reasonable means to ensure that plaintiff's privacy was protected. See Ryan Dep. 51, 54, 58 (plaintiff was brought into a private room, with the door closed, while "blankets or towels [were used] to help provide privacy" while she was being changed); Ryan Decl. ¶ 8 ("[t]he males in the room made every effort to avert their eyes from Ms. Frank [while she was being changed into hospital scrubs and they] did not physically remove her clothing or redress her"); Police Report 3-4 ("all the men present made every effort to look away while Frank was in a state of undress").

In sum, the governmental interests at stake - i.e. ensuring patient and staff security, as well as assisting in the procurement of emergency medical services for an out-of-control and intoxicated patient - were strong. While the invasion into plaintiff's privacy was significant and serious, it is nonetheless outweighed by the government interests at stake. See Serna v. Goodno, 567 F.3d 944, 953-56 (8th Cir.), cert. denied, 558 U.S. 972 (2009) (requiring a civilly-committed patient to undergo a visual body-cavity search for contraband did not violate the Fourth Amendment because the

---

Compl. 9 & Ex. D.  This evidence, a MRI report from April 19, 2012, merely reflects that plaintiff was diagnosed with a temporomandibular joint disorder.  As such, it is insufficient to establish an injury arising out of defendants' conduct.  Even assuming that such a causal connection existed, there remains no indication that Namanny or Macdonnell physically harmed plaintiff.  See Pl.'s Mot. to File Fourth Am. Compl. 9 (expressly naming Ryan, who is no longer a defendant in this action, as the perpetrator).

Page 17 - OPINION AND ORDER

government's interest in "security at institutions dedicated to the containment and treatment of mental patients[,] [which] is crucial to safety as well as treatment," outweighed the patient's "significant" interest in personal privacy). Essentially, restraint was employed to prevent the probability of dangerous behavior, and defendants used reasonable means to ensure that plaintiff's privacy remained intact throughout that process. Therefore, Namanny's and Macdonnell's use of restraint did not violate plaintiff's Fourth Amendment rights.

    B.   <u>Fourteenth Amendment Claim</u>

A federally recognized liberty interest in the right to bodily integrity exists under the Due Process Clause of the Fourteenth Amendment.[5] <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 272 (1994) (citation omitted). In particular, the concept of substantive due process precludes the government from depriving a person of liberty in such a way that "shocks the conscience." <u>See</u> <u>Porter v. Osborn</u>, 546 F.3d 1131, 1137 (9th Cir. 2008) ("[o]nly official conduct that 'shocks the conscience' is cognizable as a due process violation"). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." <u>Cnty. of Sacramento v.</u>

---

[5] Plaintiff also alleges in her TAC that defendants violated the Fourteenth Amendment's Equal Protection Clause; however, plaintiff failed to allege any facts, set forth any evidence, or make any arguments in regard to this claim. <u>See generally</u> Pl.'s Mem. in Supp. of Mot. Summ. J.; <u>see also</u> TAC ¶ 84. As such, the Court declines to address it further.

Lewis, 523 U.S. 833, 849 (1998).  Conversely, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  Id.

As a result, the government is not typically liable for its omissions.  Patel v. Kent Sch. Dist., 648 F.3d 965, 971-72 (9th Cir. 2011).  There are, however, two exceptions to this rule: (1) when a special relationship exists between the plaintiff and the state actor ("special relationship exception"); and (2) when the state actor affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger ("danger creation exception").  Id. (citations omitted).

Initially, plaintiff's claim is not cognizable under the Due Process Clause of the Fourteenth Amendment to the extent it is premised on rights already secured by the Fourth Amendment.  See Pl.'s Mem. in Supp. of Mot. Summ. J. 9 (arguing that her Fourteenth Amendment rights were violated because "Defendants Officers acted recklesskly in that the police tactical takedown was unreasonable and unnecessary"); see also TAC ¶ 67 ("[t]he individual Defendant Police Officers participated in restraining Plaintiff . . . to enforce a hospital policy [in violation of the Fourteenth Amendment]").[6]  Where "a particular constitutional amendment

---

[6] Plaintiff also contends, for the first time in her current motion, that defendants' conduct placed her in a position of danger by delaying her receipt of anti-anxiety medication.  See Pl.'s Mem. in Supp. of Mot. Summ. J. 9 ("[h]ad the Defendant Officers not interfered with [the administration of medications by restraining her], Plaintiff would have been relieved of her

Page 19 - OPINION AND ORDER

provides an explicit textual source of constitutional protection that amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." Pelster v. Walker, 185 F.Supp.2d 1185, 1189 (D.Or. 2001) (citing Albright, 510 U.S. at 281) (internal quotations and ellipses omitted).

Nevertheless, accepting that defendants' allegedly wrongful conduct is separately actionable under the Fourteenth Amendment, plaintiff's claim fails for two reasons. First, and most importantly, defendants' use of force was reasonable and there is nothing in the record to show that Namanny or Macdonnell were deliberately indifferent to plaintiff's medical needs. Plaintiff's claim under the Fourteenth Amendment based on defendants' allegedly unlawful seizure fails. See, e.g., Newmaker v. City of Fortuna, 2013 WL 6774098, *10-13 (N.D.Cal. Dec. 23, 2013) (plaintiff's Fourteenth Amendment Due Process claim dismissed where the defendant's use of force was reasonable and not excessive).

Second, neither the "special relationship" nor "danger creation" exception applies. The former has only been recognized where a plaintiff is in police custody. See Youngerberg v. Romeo,

---

acute anxiety condition and would have been readily and immediately cooperative in following the admissions instructions of the hospital staff that evening"). This assertion, however, is both without support in the record and impugned by plaintiff's position in this Court's prior summary judgment proceedings. See TAC ¶ 52-57; Frank, 2013 WL 867387 at *5-12. Plaintiff cannot obtain an advantage in these proceedings by taking positions that contravene those previously asserted. See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC, 692 F.3d 983, 993 (9th Cir. 2012).

Page 20 - OPINION AND ORDER

457 U.S. 307, 324 (1982) (special relationship exists between involuntarily committed mental patient and the state); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-5 (1976) (special relationship exists between incarcerated prisoner and the state); <u>see also</u> <u>Nattell v. Curry Cnty.</u>, 2013 WL 5372539, *5 (D.Or. Sept. 23, 2013) ("even state custody will not support a 'special relationship' claim where a person is in custody voluntarily") (citation omitted).  Prior to the restraint, however, plaintiff voluntarily accompanied defendants to SCMC and, during the restraint, plaintiff was not in police custody.

The latter is relevant only when "an unusually serious risk of harm" exists and the defendant had "actual knowledge of (or, at least, willful blindness to) that elevated risk," but neglected "to take obvious steps to address that known, serious risk." <u>Funez ex rel. Funez v. Guzman</u>, 687 F.Supp.2d 1214, 1228 (D.Or. 2009) (citation and internal quotations omitted).  "In other words, the plaintiff must show the defendant knows something is going to happen but ignores the risk and exposes someone to it." <u>Id.</u>  This test is not met here; to the extent that an unusually serious risk of harm existed from the use of cross-gender restraint due to plaintiff's past sexual abuse, defendants neither had actual knowledge of, nor acted with willful blindness to, that risk.  <u>See Frank</u>, 2013 WL 867387 at *20 ("plaintiff has not set forth any facts or evidence indicating that [Namanny or Macdonnell] knew or should have known that their attendance would cause plaintiff harm,

Page 21 - OPINION AND ORDER

which is a requisite element") (citation omitted).  Accordingly, defendants' actions did not deprive plaintiff of her Fourteenth Amendment rights.

C.  <u>Qualified Immunity</u>

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citations omitted).  To ascertain if a government actor is entitled to qualified immunity, the court determines whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). In other words, if the government actor reasonably believed that his or her conduct complies with the law, summary judgment based on qualified immunity is appropriate. <u>Id.</u> at 244; <u>see also</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Even if plaintiff could establish a violation of her Fourth or Fourteenth Amendment rights, defendants would be entitled to qualified immunity under the undisputed facts.  Namanny and Macdonnell utilized routine and minimal restraint, of limited duration, pursuant to SCMC policy and at SCMC staff's direction. They had no prior knowledge of plaintiff's past sexual abuse and

Page 22 – OPINION AND ORDER

did not cause her any physical pain or injury. Further, such restraint was medically necessary to effectuate plaintiff's treatment. Based on this record, no reasonable officer would have been on notice that the employed restraint was unlawful and/or going to cause plaintiff long-term psychological impacts.

Moreover, where there is a "lack of on-point precedent," the court is ordinarily "compel[led] . . . to grant qualified immunity" because any other outcome "would allow plaintiffs to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Maxwell v. Cnty. of San Diego, 697 F.3d 941, 949 (9th Cir. 2012) (citations and internal quotations omitted). The parties have not cited to, and the Court is not aware of, any authority delineating when a police officer can or should employ restraint of a mentally ill and intoxicated individual after that individual is in a private hospital's custody for emergency medical services. See generally Pl.'s Mem. in Supp. of Mot. Summ. J.; Defs.' Mem. in Supp. of Cross-Mot. Summ. J. Thus, defendants' motion is granted as to plaintiff's federal claims and plaintiff's motion is denied.

III. State Claims

While she alleges negligence, NIED, RIED, and IIED claims against Namanny and Macdonnell in the TAC, as defendants point out, plaintiff's summary judgment briefs address only her federal claims. Compare TAC ¶¶ 58-64, with Pl.'s Mem. in Supp. of Mot.

Page 23 - OPINION AND ORDER

Summ. J. 2-12; see also Defs.' Resp. to Mot. Summ. J. 3.
Accordingly, the Court construes plaintiff's state law claims as
waived. In any event, plaintiff's negligence claim fails because
she neglected to demonstrate the existence of a duty that was
breached and/or resulted in harm. See, e.g., Nattell, 2013 WL
5372539 at *8-9. Plaintiff's state law claims also fail for the
same reasons articulated in this Court's previous summary judgment
decision. See Frank, 2013 WL 867387 at *5-17 (outlining the
requirements of negligence, NIED, RIED, and IIED claims and
granting summary judgment in favor of SCMC staff members who
participated in plaintiff's restraint, including Ryan and
Lancaster). Defendants' motion is therefore granted and
plaintiff's motion is denied.


## CONCLUSION

Plaintiff's motion for summary judgment (doc. 217) is DENIED.
Namanny and Macdonnell's cross-motion for summary judgment
(doc. 230) is GRANTED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 23 day of February 2014.

_____

Ann Aiken
United States District Judge